UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| *In re:*<br><br>*SEAN DUNNE,*<br><br>    *Debtor*<br>_____<br><br>*SEAN DUNNE,*<br>    *Appellant,*<br><br>    *v.*<br><br>*ULSTER BANK IRELAND LIMITED,*<br>    *Appellee.* | Civil No. 3:13cv996 (JBA)<br><br>March 11, 2014 |

**RULING GRANTING APPELLEE'S MOTION TO DISMISS**

Appellant Sean Dunne has appealed [Doc. # 1] the order of the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court") which granted Appellee-creditor Ulster Bank Ireland Limited ("Ulster") limited relief from the automatic stay of litigation that issued under 11 U.S.C. § 362 upon the filing of Dunne's Chapter 7 bankruptcy petition. Ulster now moves [Doc. # 20] to dismiss the appeal for lack of appellate jurisdiction, contending that (1) the Bankruptcy Court's order is a not a final order subject to appeal; (2) Dunne's failure to seek a stay from this Court pending appeal allowed for the actions contemplated by the Bankruptcy Court order to be substantially completed, and thus, no effective relief can be ordered by this Court, and (3) even if effective relief could be ordered, doing so would be inequitable. For the reasons that follow, Appellee's motion is granted on mootness grounds.

I.      Facts

   A.      Background

Since the 1990s Dunne, an Irish citizen who has resided in the United States for the past several years, has been a real estate developer in Ireland, primarily through his businesses, DCD Builders and its subsidiaries (collectively, "DCD").  In 2005, DCD received financing commitments (the "Syndicated Loan Agreement") of up to €326,500,000 from a syndicate of Irish lenders for which Appellee Ulster is an agent.  The funds were intended for a development project in Dublin and were secured by substantially all of DCD's assets, and Dunne also issued a personal guarantee on the Syndicated Loan Agreement.  Ulster also contends that Dunne owes it over €18 million for personal loans and over €137.4 million under personal guarantees of other corporate debt.

In January 2012, after DCD defaulted on the Syndicated Loan Agreement, Ulster demanded payment from DCD of €259,198,042.39 and, one month later, from Appellant of €163,168,247.32 in connection with his personal guarantee.  Ulster was subsequently awarded a judgment against Dunne for €164,586,493.05.  *See Ulster Bank Ireland Limited v. Sean Dunne*, 2012 No. 1229 S (2012 No. 93 COM), Republic of Ireland, High Court, Commercial Division (2012).

B.     **Irish Bankruptcy Law**[1]

In Ireland, a creditor may initiate a bankruptcy proceeding only by filing a petition verifying that the debtor, among other things, committed an "act of bankruptcy," which is defined as an act or default, voluntary or involuntary, committed by a debtor that is either evidence of an intent to deprive creditors of their rights through fraudulent assignment or if there are other indications insolvency.  *See* § 11, Irish Bankruptcy Act 1988, (Act No. 27/1988).

After a creditor has filed a bankruptcy petition, the debtor is afforded a hearing in which he or she can contest the allegations in the petition.  If after this hearing, the debtor is "adjudicated bankrupt," an "Official Assignee"—akin to a bankruptcy trustee in the United States— is appointed by operation of law, and "all property belonging to [the debtor] . . . on the date of adjudication vests in the Official Assignee for the benefit of the creditors of the bankrupt."  *Id.*  Thereafter, creditors can seek to have the Official Assignee replaced with a trustee, who is typically a private party with expertise in insolvency matters and who acts under control of the court.  However, the appointment of a trustee is not required.

C.     **Bankruptcy Proceedings**

On February 12, 2013, Ulster filed a petition with the Irish High Court to have Dunne adjudicated "bankrupt."  *See In the Matter of a Petition for Adjudication of Bankruptcy by Ulster Bank Ireland Limited against Sean Dunne*, 2013 No. 798P, Republic

---

[1] The following description of the basic procedures of Irish bankruptcy law is drawn from Appellee's memorandum of law (s*ee* Appellee's Mem. Supp. [Doc. # 21] at 3–4), and is not contested by Dunne.

of Ireland, High Court (2013) ("Irish Bankruptcy Proceeding"). Ulster was initially unable to serve its petition on Dunne, and the Irish Bankruptcy Proceeding was adjourned several times.

On March 29, 2013—approximately six weeks after the commencement of the Irish Bankruptcy Proceeding, but before Ulster was able to serve him personally or he was "adjudicated bankrupt"—Dunne filed a Chapter 7 petition in the U.S. Bankruptcy Court. *See In re Sean Dunne*, No. 13-50484 (AHWS) (D. Conn. Bankr.) [Doc. # 1]. By operation of bankruptcy law, the filing of this petition stayed all other litigation against Dunne.[2] On May 17, 2013, Ulster filed a motion for relief from this automatic stay, seeking "only such relief as is necessary to fully effectuate service of process in the Irish Bankruptcy Proceeding and to adjudicate the Debtor 'bankrupt' under Irish law." *In re Sean Dunne*, No. 13-50484 (AHWS), Mot. for Limited Relief from Stay [Doc. # 54].

On June 4, 2013, the Bankruptcy Court granted Ulster's motion after hearing oral argument and, on June 12, 2013, entered an order providing that the automatic stay was modified to:

> (1) permit Ulster "to take all actions necessary under Irish law to perfect service upon the debtor in relation to [the Irish Bankruptcy Proceeding];"
>
> (2) permit all parties to "take all actions necessary in connection with or relating to Ulster's application to have the Debtor adjudicated 'bankrupt'

---

[2] "The general policy behind [the automatic stay] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected. In addition, the automatic stay provision is intended to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *S.E.C. v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000) (internal citations and quotation marks omitted).

> in the Irish Bankruptcy Proceeding, provided however, that nothing in this Order shall deprive this Court of jurisdiction over the Debtor or over the property of the bankruptcy estate;" and
>
> (3) permit all parties "in the event that the Debtor is adjudicated 'bankrupt' in the Irish Bankruptcy Proceeding, to attend and participate in any proceeding for nominating and/or voting in respect of the appointment of a trustee pursuant to section 110 of the Irish Bankruptcy Act . . . and to take all actions set forth under the laws of Ireland in connection therewith."

*In re Sean Dunne*, No. 13-50484 (AHWS), Order Granting Limited Relief from the Automatic Stay (the "Lift Stay Order") [Doc. # 103].

The Lift Stay Order provided that "no party-in-interest in this case shall, except by leave of this Court, take any affirmative action in the Irish Bankruptcy Proceeding that violates the terms of the Automatic Stay" and that the order was entered "without prejudice to the ability of any party to seek relief from this Court and this Order, as appropriate, and this Court reserves and preserves jurisdiction to consider any dispute with respect hereto." *Id.*

On June 14, 2013, Dunne filed a timely appeal of the Lift Stay Order with this Court, and also filed a motion with the Bankruptcy Court for a stay of the Lift Stay Order pending appeal, which the Bankruptcy Court denied on July 18, 2013. *See In re Sean Dunne*, No. 13-50484 (AHWS), Order on Debtor's Mot. for Stay Pending Appeal [Doc. # 159]. Also on July 18, 2013, Ulster served Dunne in connection with the Irish Bankruptcy Proceeding. (Judgment of Irish High Court, Dec. 6, 2013, Ex. C to Colgan Decl. [Doc. # 22] ¶ 13.) On July 29, 2013, the Irish Court adjudicated Dunne "bankrupt" and, by operation of Irish law, all of his property vested in the Official Assignee for the

benefit of Dunne's creditors.  (Order of Adjudication, Ex. A to Colgan Aff.)  On December 6, 2013, the Irish Court rejected Dunne's challenge to the validity of the bankruptcy adjudication and affirmed its judgment.  (Judgment of Irish High Court ¶ 1.)

## II. Discussion

Ulster argues that this Court lacks subject matter jurisdiction over Dunne's appeal, because (1) the Lift Stay Order was not a "final order" under 28 U.S.C. § 158(a) and (2) the appeal is moot.[3]

### A. Final Order

"Under 28 U.S.C. § 158(a), district courts have jurisdiction to hear appeals from final orders of the bankruptcy courts.  Because bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation.  Some appeals are therefore allowed before the entire bankruptcy is resolved." *In re Chateaugay*, 880 F.2d 1509, 1511 (2d Cir. 1989) ("*Chateaugay I*").

Ulster argues that the Lift Stay Order is not a final order, because (1) it "contemplates further hearings and consideration before the Bankruptcy Court" and (2)

---

[3] Ulster does not address the merits of Dunne's appeal, which contends that the Bankruptcy Court abused its discretion in imposing the Lift Stay Order, because (1) it failed to conduct an evidentiary hearing beforehand, (2) Ulster failed to demonstrate good cause for relief from the automatic stay, and (3) the Lift Stay Order subjects Dunne to "a second full blown bankruptcy in Ireland," which is not authorized by statute or case law. (*See* Appellant's Br. [Doc. # 14] at 1–13.)

"does not finally dispose of discrete issues within the larger bankruptcy case." (Appellant's Mem. Supp. at 9.)

Contrary to Ulster's assertions, however, "[c]ourts have uniformly held an order lifting the automatic stay to be final and appealable." *Chateaugay I*, 880 F.2d at 1511. The cases relied upon by Ulster are inapposite, because they held that the *denial* of a lift stay motion is not a final order. *See In re Deak & Co., Inc.*, 65 B.R. 410 (S.D.N.Y. 1986); *In re Enron*, 316 B.R. 767, 771 (S.D.N.Y. 2004). Although "courts have had a more difficult time deciding whether orders denying relief from the stay are final, most circuits that have considered the issue have held that such orders are final," *Chateaugay I*, 880 F.2d at 1511 (internal citations and quotation marks omitted), unless "the bankruptcy court has [] indicated that it contemplates further proceedings on the question of relief from the stay." *In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012).[4] Thus, even if as Ulster argues the Bankruptcy Court contemplated further proceedings on the Lift Stay

---

[4] At oral argument, Appellee cited language from *Quigley* in which the Second Circuit noted that "whether a bankruptcy court order 'involve[s] an appeal from a denial of a motion to lift the automatic stay . . . [or] involves an appeal from an order holding . . . that the automatic stay applies to the action' is not 'a distinction of consequence to the finality issue.'" 676 F.3d at 51 (quoting *In re Lomas Fin. Corp.*, 932 F.2d 147, 151 n.2 (2d Cir. 1991) (alterations in original)). *Quigley* does not support Appellee's contention, however, because it concerned a preliminary injunction issued by the bankruptcy court that "clarified that a stay applied to a particular party." *Quigley*, 676 F.3d at 51. Accordingly, the order under review was the functional "equivalent of a decision from that court on a motion seeking relief from a stay." *Id*. Read in context, the Second Circuit simply held that whether a bankruptcy court stays litigation by denying a motion for relief from the automatic stay or by issuing a preliminary injunction prohibiting litigation is not a distinction of consequence. It does not stand for the proposition that orders denying relief from the stay and lifting the stay are equivalent. In fact, in *Quigley* the Second Circuit reaffirmed *Chateaugay I* and stated that "[b]ankruptcy court orders lifting an automatic stay are final for purposes of appealability." *Quigley*, 676 F.3d at 51.

7

Order, because this order granted, rather than denied, relief from the automatic stay, it is a final order under 28 U.S.C. § 158(a).

### B. Mootness

Even if the Lift Stay Order is a final order and generally subject to appellate review, Ulster argues that Dunne's appeal is moot on both constitutional and equitable grounds, because most of the limited actions permitted by the Lift Stay Order have been performed and thus Dunne cannot seek any effective relief from this Court. Ulster further argues that Dunne's failure to seek a stay of the Lift Stay Order from this Court pending appeal renders the appeal moot under equitable considerations.

"In bankruptcy proceedings, the mootness doctrine involves equitable considerations as well as the constitutional requirement that there be a case or controversy. These concerns often cannot be addressed separately; they are interactive, as the finality rule limits the remedies a court can offer." *In re Chateaugay Corp.*, 10 F.3d 944, 952–53 (2d Cir. 1993) ("*Chateaugay III*").

Under Article III's "case or controversy" requirement, "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).

The Lift Stay Order allowed Ulster to perform only three limited steps in the Irish Bankruptcy Proceeding: (1) serving Dunne with the petition, (2) taking the necessary steps to have Dunne "adjudicated bankrupt," and (3) to "attend and participate" in the proceeding for nominating a trustee. (*See* Lift Stay Order at 1–2.) There is no dispute

that that the first two steps have already occurred, (*see* Judgment of Irish High Court), and cannot be undone by an order from this Court.[5]

Nevertheless, Dunne argues that this Court can still order effective relief, because "[r]e-imposition of the automatic stay will prevent Ulster from participating in the Irish proceedings, including in the appointment of an Irish trustee or the parties from entering into an ad hoc cross-border protocol as contemplated by the Order." (Appellant's Reply [Doc. # 24] at 6.) While a reversal by this Court could prevent Ulster from "attend[ing] and participat[ing]" in any proceeding for nominating an Irish bankruptcy trustee, Dunne overstates the scope of the Lift Stay Order.

By its own terms, the Lift Stay Order provided for only the limited relief described *supra*, and subsequently the Bankruptcy Court emphasized the limited nature of its order, explaining that it could not be used to "affect property of the bankruptcy estate," which would remain "in a status quo position until the further orders of this Court and the court in Ireland." *In re Sean Dunne*, No. 13-50484 (AHWS), June 4, 2013 Hr'g Tr. [Doc. # 106] at 89. At oral argument, Appellant conceded that the Lift Stay Order does not lift the automatic stay with respect to Ulster as a creditor in the U.S. Bankruptcy Court and does not allow Ulster to participate in the Irish Bankruptcy Proceeding beyond participating in the process for appointing a trustee. Accordingly, Dunne's concerns regarding a cross-border bankruptcy protocol were not addressed by the Lift Stay Order and remain for the Bankruptcy Court to address in the first instance.

---

[5] At oral argument, Ulster represented that the process for appointing a trustee in Ireland has not yet commenced, and it is not certain if it ever will, as the process is not mandatory. Ulster characterized the provision of the Lift Stay Order allowing it to participate in this process as a relatively minor and immaterial aspect of the order.

Although this Court's reversal of the Lift Stay Order could perhaps result in some degree of relief, there are strong equitable grounds for considering the appeal moot even if it is not moot under Article III. "An appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable. Such a dismissal is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal. These principles are especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay II*") (internal citations and quotation marks omitted).

Although Dunne sought a stay of the Lift Stay Order from the Bankruptcy Court, after that motion was denied on July 18, 2013, he did not thereafter seek a stay pending appeal from this Court.[6] After the Lift Stay Order took effect, two of the three actions that were contemplated by that order occurred: Ulster served Dunne in connection with the Irish Bankruptcy Proceeding, and Dunne was adjudicated bankrupt. All that potentially remains is for Ulster to "attend and participate" in a proceeding for nominating a trustee. (*See* Lift Stay Order at 1–2.) Thus, Dunne's failure to seek a stay of the Lift Stay Order from this Court allowed the Irish High Court to enter an order adjudicating Dunne

---

[6] Although Ulster served Dunne on the same day that the Bankruptcy Court denied Dunne's motion for a stay, Dunne does not contend that he had insufficient time to seek a stay from this Court.


bankrupt. Under such circumstances, courts have found that equitable considerations render an appeal moot.

In *Chateaugay II*, the Second Circuit held that a bankruptcy appeal should be dismissed as moot where a November 1991 order allowed the debtor corporation to make payments to its pension plan for three months of benefits. 988 F.2d at 324. A creditor filed a timely appeal but did not seek a stay of the order from either the bankruptcy or district courts. In July 1992, the district court dismissed the appeal on the grounds that the creditors did not have standing to challenge the order. After the issuance of the bankruptcy court order and before the district court ruling, the debtor had paid all of the funds into the pension fund that were provided for by the order and such funds were disbursed to the plan's beneficiaries.

The Second Circuit did not address the merits of the district court's order or the appellants' underlying appeal, but instead vacated the district court's order with instructions to dismiss the appeal as moot. *Id.* at 327. The Second Circuit found that reversing the bankruptcy court order would be inequitable, because the "recoupment of these funds from [the pensioners], in addition to being impracticable, would impose an unfair hardship on faultless beneficiaries," and that if the appellants wished to prevent the debtor from making the payments "it should have requested a stay from the bankruptcy court; if that request had been denied, the [appellants] could have appealed from the denial of the stay and moved in the district court for a stay pending that appeal." *Id.* at 326. Given that the appellants' failure to seek a stay allowed the actions contemplated by the bankruptcy court ruling to occur and that only "illusory" relief was available by the

time the appeal progressed to the district court, the Second Circuit held that the appeal was moot. *Id.*

Considering the dual concerns of Article III and equitable mootness, which must be considered "interactive[ly]," *see Chateaugay III*, 10 F.3d at 952, the Court concludes that this appeal is moot. Two of the three steps contemplated by the Lift Stay Order have already been consummated and cannot be undone. Furthermore, these two steps allowed the Irish court to adjudicate a separate bankruptcy proceeding, and reversing the Lift Stay Order could only prevent Ulster from participating in the process of selecting a trustee in Ireland, but not terminate or alter the ongoing Irish proceedings. As Dunne's major creditor, Ulster may have a particular interest in participating in this process, and ordering it to not do so after Dunne has already been adjudicated bankrupt by an Irish court could be in derogation of principles of international comity. *See Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 890 (S.D.N.Y. 1994) ("I am not sure how a modification of the permanent injunction order would affect the actions taken by the High Court and the Supreme Court of Bermuda. . . . I note that even were I convinced that a modification of the permanent injunction could afford appellants relief, concerns of comity would make me reluctant to issue a modification that would call into question the validity of a Scheme that has statutory effect in the United Kingdom."). Given that Appellant's failure to seek a stay has both limited the relief available and created a situation where the only remaining potential relief would be inequitable, this appeal is dismissed as moot. *See id.*

**III.     Conclusion**

For the reasons set forth above, Appellee's Motion [Doc. # 20] to Dismiss is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 11th day of March, 2014.